**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

MICHAEL MEYERS, *et al.*, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BHI ENERGY SERVICES, LLC and BHI ENERGY I SPECIALTY SERVICES LLC,

Defendants.

Lead Case No.: 1:23-cv-12513-LTS

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL AND PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT TERMS ..... 3

III. THE REQUESTED ATTORNEYS' FEES SHOULD BE GRANTED. ..... 3

A. Legal Standard. ..... 3

B. The Requested Fee is Reasonable Under the Percentage Method. ..... 4

1. The Size of the Fund Created and the Number of Persons Benefitted. ..... 4

2. The Presence or Absence of Substantial Objections by Class Members. ..... 7

3. The Skill and Efficiency of the Attorneys Involved and the Complexity and Duration of the Litigation. ..... 7

4. The Risk of Nonpayment. ..... 10

5. The Amount of Time Devoted to the Case by Plaintiffs' Counsel. ..... 11

6. Awards in Similar Cases. ..... 13

C. A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee. ..... 15

IV. CLASS COUNSEL'S LITIGATION COSTS AND EXPENSES SHOULD BE REIMBURSED. ..... 17

V. PLAINTIFFS SHOULD BE GRANTED SERVICE AWARDS ..... 17

VI. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

## Cases

*Bacchi v. Massachusetts Mut. Life Ins. Co.*,

No. CV 12-11280-DJC, 2017 WL 5177610 (D. Mass. Nov. 8, 2017) ........ 7

*Barr v. Drizly, LLC*,

No. 1:20-CV-11492, 2021 WL 5149982 (D. Mass. Nov. 4, 2021) ........ 6, 15, 16

*Beasley v. TTEC Servs. Corp.*,

No. 22-CV-00097-PAB-STV, 2024 WL 710411 (D. Colo. Feb. 21, 2024) ........ 17

*Bezdek v. Vibram USA Inc.*,

79 F. Supp. 3d 324 (D. Mass.) ........ 3, 4, 6

*Blanco v. Xtreme Drilling & Coil Servs., Inc.*,

No. 16-CV-00249-PAB-SKC, 2020 WL 4041456 (D. Colo. July 17, 2020) ........ 11

*Boudreaux v. Systems East, Inc.*,

No. 5:23-cv-01498 (N.D.N.Y.) ........ 7

*Broeske v. Forward Bank*,

No. 2024cv000006 (Wood Cnty. Wis.) ........ 13

*Corra v. ACTS Ret. Servs., Inc.*,

No. CV 22-2917, 2024 WL 22075 (E.D. Pa. Jan. 2, 2024) ........ 8

*Cox v. Clarus Mktg. Grp., LLC*,

291 F.R.D. 473 (S.D. Cal. 2013) ........ 14

*Curtis v. Scholarship Storage Inc.*,

No. 2:14-CV-303-NT, 2016 WL 3072247 (D. Me. May 31, 2016) ........ 7

*Desue v. 20/20 Eye Care Network, Inc.*,

No. 21-CIV-61275-RAR, 2023 WL 4420348 (S.D. Fla. July 8, 2023). ........ 10

*Ebert v. PRGX Global, Inc.*,
No. 1:23-cv-04233 (N.D. Ga.) .... 14

*Fox v. Iowa Health Sys.*,
No. 3:18-CV-00327-JDP, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021) .... 8

*Fulton-Green v. Accolade, Inc.*,
No. 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) .... 8

*Gaston v. FabFitFun, Inc.*,
2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) .... 8

*Gordon v. Chipotle Mexican Grill, Inc.,*
No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) .... 8

*Hashemi v. Bosley, Inc.*,
No. CV 21-946 PSG (RAOX), 2022 WL 18278431 (C.D. Cal. Nov. 21, 2022) .... 9

*Hogsed, et al. v. PracticeMax, Inc.*,
No. 2:22-cv-01261 (D. Ariz.) .... 16

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) .... 9

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
No. 3:20-MN-02972-JFA, 2024 WL 5247287 (D.S.C. Dec. 30, 2024) .... 9

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
No. 3:08-1998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) .... 8

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
No. 17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) .... 6

*In re Fidelity/Micron Sec. Litig.*,

167 F.3d 735 (1st Cir. 1999) .......... 17

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

293 F.R.D. 21 (D. Me. 2013) .......... 8

*In re Intuniv Antitrust Litig.*,

No. 16-CV-12396-ADB, 2022 WL 398744 (D. Mass. Jan. 26, 2022) .......... 18

*In re Lupron Mktg. & Sales Pracs. Litig.*,

No. 01-CV-10861-RGS, 2005 WL 2006833 (D. Mass. Aug. 17, 2005) .......... 11

*In re MOVEit Customer Data Sec. Breach Litig.*,

No. 1:23-MD-03083-ADB-PGL, 2024 WL 5092276 (D. Mass. Dec. 12, 2024) .......... 11

*In re Novant Health, Inc.*,

No. 22-CV-697, 2024 WL 3028443 (M.D.N.C. June 17, 2024) .......... 13, 17

*In re Onix Grp., LLC Data Breach Litig.*,

No. CV 23-2288-KSM, 2024 WL 5107594 (E.D. Pa. Dec. 13, 2024) .......... 7, 16

*In re Prograf Antitrust Litig.*,

No. 1:11-MD-02242-RWZ, 2015 WL 13908415 (D. Mass. May 20, 2015) .......... 16

*In re Relafen Antitrust Litig.*,

231 F.R.D. 52 (D. Mass. 2005) .......... 3, 15, 16

*In re Safety Components, Inc. Sec. Litig.*,

166 F. Supp. 2d 72 (D.N.J. 2001). .......... 17

*In re Solara Medical Supplies Data Breach Litig.*,

No. 3:19-cv-02284 (S.D. Cal.) .......... 14

*In re Solodyn Antitrust Litig.*,

No. CV114MD2503DJC, 2018 WL 7075881 (D. Mass. July 18, 2018).................................. 18

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,

No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ......................................... 8

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig*.,

56 F.3d 295 (1st Cir. 1995)..................................................................................... 3, 4

*In re TJX Cos. Retail Sec. Breach Litig.*,

584 F. Supp. 2d 395 (D. Mass. 2008). ............................................................................ 4

*In re Wawa, Inc. Data Sec. Litig.*,

2022 WL 1173179 (E.D. Pa. Apr. 20, 2022) ..................................................................... 14

*In re: MOVEit Customer Data Security Breach Litig.*,

No. 1:23-md-03083-ADB (D. Mass.) ............................................................................... 6

*In re: Orrick, Herrington & Sutcliffe, LLP Data Breach Litig.*,

No. 3:23-cv-04089 (N.D. Cal.) ...................................................................................... 16

*Johnson v. Yuma Reg'l Med. Ctr.*,

No. CV-22-01061-PHX-SMB, 2024 WL 4803881 (D. Ariz. Nov. 15, 2024).......................... 11

*Kondo v. Creative Servs. Inc.*,

No. 1:22-cv-10438 (D. Mass.) ......................................................................... 6, 13, 15

*Krant v. UnitedLex Corp.*,

No. 23-2443-DDC-TJJ, 2024 WL 5187565 (D. Kan. Dec. 20, 2024)..................................... 13

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,

No. 17-CV-10219, 2017 WL 5900058 (D. Mass. Nov. 28, 2017) .......................................... 15

*Nilsen v. York Cnty.*,

382 F. Supp. 2d 206 (D. Me. 2005) .......................................................................................... 6

*O'Connor v. Dairy*,

No. 2:14-00192-NT, 2018 WL 3041388 (D. Me. June 19, 2018) ........................................... 11

*Perez v. Carvin Wilson Software LLC*,

No. CV-23-00792 (D. Ariz.) ............................................................................................. 14, 16

*Purinton v. Moody's Co-Worker Owned, Inc.*,

No. 2:20-CV-00296-JAW, 2023 WL 167560 (D. Me. Jan. 12, 2023) ................................ 9, 13

*Rivera-Marrero v. Banco Popular de Puerto Rico*,

No. CV 22-1217 (ADC), 2023 WL 2744683 (D.P.R. Mar. 31, 2023) .................................... 10

*Roberts v. TJX Companies, Inc.*,

No. 13-CV-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ................................ 16

*Scifo v. Alvaria, Inc.*,

No. 23-CV-10999-ADB, 2024 WL 4252694 (D. Mass. Sept. 20, 2024) ................................ 10

*Turner v. The Johns Hopkins Health Sys. Corp.*,

No. 24-c-23-002983 (Cir. Ct. Baltimore Md.) ........................................................................ 13

*Weinberger v. Great Northern Nekoosa Corp.*,

925 F.2d 518 (1st Cir. 1991) ...................................................................................................... 3

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................................ 3

## I. INTRODUCTION[1]

This class action lawsuit stems from a cyberattack impacting Defendant BHI Energy Services, LLC and Defendant BHI Energy I Specialty Services LLC's (collectively, "BHI" or "Defendants") computer network, causing the personal data of Plaintiffs and Class Members to be accessible to cybercriminals between May 30, 2023, and July 7, 2023 (the "Data Incident"). (Declaration of William B. Federman ("Federman Decl."), ¶ 4 (attached hereto as **Exhibit 1**)). The Parties engaged in hard fought litigation that included consolidating multiple lawsuits filed in federal court, coordination of the various Plaintiffs, a detailed consolidated complaint, a motion to dismiss the consolidated complaint, a motion to strike class allegations, substantial informal discovery, and extensive efforts to settle this case. (*Id.*). After protracted arm's length negotiations overseen by an experienced mediator (Bennett G. Picker of Stradley Ronon Stevens & Young, LLP), the Parties reached a Settlement that is fair, reasonable, and adequate. (*Id.*).

The Court preliminarily approved the Settlement on November 14, 2024. (ECF No. 48). The Court-approved notice program, notifying the Class of the Settlement and their rights thereunder, was implemented by the Settlement Administrator, Atticus Administration, LLC. (Federman Decl., ¶ 8). Class Counsel[2] now move the Court for an order awarding attorneys' fees, costs, expenses, and service awards to compensate Class Counsel and Plaintiffs for the substantial work they performed that resulted in an outstanding Settlement for the Class.

Class Counsel negotiated a class settlement that provides substantial benefits to Settlement Class Members, in the form of two (2) components: (i) a $1.5 million non-reversionary common

[1] All capitalized terms herein shall have the meaning ascribed to them in the Settlement Agreement (ECF No. 47-1), unless explicitly stated herein. Citations to the Settlement Agreement will be abbreviated as "SA, ¶ ___."

[2] "Class Counsel" refers to William B. Federman of Federman & Sherwood and A. Brooke Murphy of Murphy Law Firm. (Order Granting Preliminary Approval of Class Action Settlement, ¶ 6, ECF No. 48).

fund that will provide participating Settlement Class Members with compensation for Out-of-Pocket Losses, reimbursement for Lost Time, Credit Monitoring and Identity-Protection Services, *Pro Rata* Cash Payments, CCPA Payments; and (ii) significant injunctive relief worth $6.4 million. (SA, ¶¶ 3.1–3.8). This Settlement represents an excellent result for the Settlement Class and was obtained against Defendants represented by a well-regarded and experienced national defense law firm. (Federman Decl., ¶ 6). Although Class Counsel believe in the merits of Plaintiffs' claims, this litigation was inherently risky and complex. (*Id.* ¶ 7). The claims involve the intricacies of data breach litigation (a fast-developing area in the law), and Plaintiffs would face risks at each stage of litigation. (*Id.*). Against these risks, it was through the skill, effort, and hard-fought negotiations of Class Counsel and Plaintiffs that the Settlement was achieved for the benefit of the Settlement Class. (*Id.*).

Class Counsel now respectfully move this Court for an award of attorneys' fees in the amount of $500,000.00, which equates to approximately 33% of the settlement fund or approximately 6.3% of the total value of the Settlement.[3] (*Id.* ¶ 12). This request is ***$100,000.00 lower*** than the amount Class Counsel were permitted to seek under the terms of the Settlement Agreement. (SA, ¶ 5.2). As of the date of this filing, ***no*** Class Member has objected to the Settlement nor the requested attorneys' fees. (Federman Decl., ¶ 9). When applying the relevant factors and standards, this request falls well within the range of reasonableness. Class Counsel's fee and expense request is fair and reasonable under both a percentage of the fund approach and a lodestar approach.

In addition to the attorneys' fees, Plaintiffs' Counsel also seeks an award of reasonable litigation costs and expenses in the amount of $18,370.78. Plaintiffs also seek service awards for

[3] The total value of the Settlement is $7.9 million when considering the cash portion of the Settlement ($1.5 million) and the cost of the injunctive relief ($6.4 million).

the Class Representatives in the amount of $2,500.00 each, for the Plaintiffs' efforts on behalf of the Settlement Class. For each of the reasons identified below, the instant motion should be granted.

## II. FACTUAL AND PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT TERMS.

In the interest of judicial efficiency, for factual and procedural background on this case and a summary of the Settlement terms, Plaintiffs respectfully refer this Court to and hereby incorporate by reference Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 46) and Memorandum of Law in Support (ECF No. 47) filed on November 13, 2024, and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith.

## III. THE REQUESTED ATTORNEYS' FEES SHOULD BE GRANTED.

### A. Legal Standard.

Pursuant to Federal Rule of Civil Procedure 23(h), attorneys in a certified class action may be awarded reasonable fees and costs, subject to the wide discretion of the trial judge. Fed. R. Civ. P. 23(h); *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 n. 6 (1st Cir. 1995); *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 523 (1st Cir. 1991). "Under the common fund doctrine, where attorneys succeed in obtaining a fund that benefits the class, they are entitled to 'a reasonable attorney's fee from the [settlement] fund as a whole."' *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (quoting *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)).

"The two methods of calculating attorneys['] fees are the lodestar method and percentage of fund method." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77 (D. Mass. 2005) (citing *Thirteen Appeals*, 56 F. 3d at 305). "The lodestar method requires the court to determine the number of

hours reasonably expended multiplied by a reasonable hourly rate for attorneys of similar skill within that geographic area." *Id.* "Under the percentage of fund method the court shapes the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation." *Id.* (internal quotation marks omitted).

The First Circuit has held that in contingency fee cases, the "percentage of the fund" approach is appropriate because it is easy to administer, reduces the possibilities of collateral disputes, enhances judicial efficiency, is less taxing on judicial resources and "better approximates the workings of the marketplace." *Thirteen Appeals*, 56 F.3d at 307. Under the percentage method, courts generally award fees "in the range of 20–30%, with 25% as the benchmark." *Bezdek*, 79 F. Supp. 3d at 349–50 (quotation marks and citation omitted).

When determining the reasonableness of the requested fee award, the First Circuit generally considers the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 401 (D. Mass. 2008).

**B. The Requested Fee is Reasonable Under the Percentage Method.**

Class Counsel's fee request of $500,000—which equates to approximately 33% of the settlement fund—is reasonable and meets each of the factors identified above, meriting the Court's approval.

**1. The Size of the Fund Created and the Number of Persons Benefitted.**

Through Class Counsel's extensive efforts and negotiations, Class Counsel achieved a Settlement valued at approximately $7.9 million for approximately 88,408 Settlement Class

Members. The Settlement provides two (2) components of meaningful relief: (i) cash payments to Settlement Class Members; and (ii) injunctive relief. (SA, ¶¶ 2.39, 3.1(b)(i–iv)).

Under the cash component of the Settlement, Class Counsel secured a $1.5 million non-reversionary common fund which will be used to pay for the following categories of benefits to Settlement Class Members: (i) reimbursement of time spent responding to the Data Breach up to four (4) hours at the rate of $25.00 per hour ($100.00 maximum); (ii) up to $7,500.00 per Settlement Class Member, for reimbursement of Out-of-Pocket Losses incurred as a result of the Data Breach; (iii) two (2) years of Identity Theft and Credit Monitoring Services, including $1,000,000 of identity theft insurance; (iv) cash payments of $100.00 to California Subclass Members for the CCPA claim brought on their behalf; and (v) *Pro Rata* Cash Payments, the amount of which will be determined by the number of claims submitted. (*Id.* ¶¶ 2.39, 3.1–3.8).

Additionally, under the injunctive relief portion of the Settlement, BHI has agreed to implement the following meaningful Business Practice Commitments: (i) implementing and maintaining multi-factor authentication on BHI's remote access virtual private network; (ii) extending BHI's deployment of endpoint detection and response within its systems; (iii) extending BHI's deployment of antivirus software within its systems; (iv) decommissioning legacy and unused systems; and (v) taking offline from BHI's corporate systems data related to former employees within seven (7) years of the termination of employer-employee relationship. (*Id.* ¶¶ 3.1(b)(i–iv)). BHI will maintain these Business Practice Commitments for a period of at least three (3) years. (*Id.* ¶ 3.2(c)). The total cost of these Business Practice Commitments is approximately $6.4 million. (*Id.*). These Business Practice Commitments will benefit every Settlement Class Member regardless of if they submit a claim for monetary relief because they will help ensure that their personal information, which remains in BHI's possession, will be adequately protected by BHI going forward. Importantly, the injunctive relief made available through the Settlement

mirrors the relief Class Members could expect to receive only after a successful trial, adding further value to the Settlement. *See Bezdek*, 79 F. Supp. 3d at 346 (citation omitted) ("Injunctive relief has been recognized as a meaningful component of a settlement agreement, particularly where it mimics the injunctive relief that the plaintiffs could achieve following trial."); *Nilsen v. York Cnty.*, 382 F. Supp. 2d 206, 213 (D. Me. 2005) (recognizing the injunctive relief the settlement provided was equivalent to what the plaintiffs could recover following a successful liability determination at trial and added value to the settlement); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-md-2800-TWT, 2020 WL 256132, at *3 (N.D. Ga. Mar. 17, 2020) (finding commitment to invest in "data security and related technology substantially benefits the class because it ensures adequate funding for securing plaintiffs' information long after the case is resolved."), *rev'd in part on other grounds*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. June 3, 2021)

Taking both components of the Settlement together, the Settlement provides a remarkable recovery of $89.36 per Settlement Class Member.[4] Even when considering just the per person value of the cash portion alone, it equates to approximately $16.97 per person, which still exceeds many per person recoveries obtained in other data breach settlements. *See, e.g.*, *Kondo v. Creative Servs. Inc.*, No. 1:22-cv-10438, ECF No. 39 (D. Mass.) (approximate per recovery of $7.26 per class member); *Barr v. Drizly, LLC*, No. 1:20-CV-11492, 2021 WL 5149982 (D. Mass. Nov. 4, 2021) (approving settlement valued between $3,350,00 and $7,105,750 for a class of approximately 2.5 million people); *see also In re: MOVEit Customer Data Security Breach Litig.*, No. 1:23-md-03083-ADB, ECF No. 1293 (D. Mass.) (motion for preliminary approval pending for settlement of $2.8 million for a class of approximately 2 million individuals); *Boudreaux v.*

[4] Calculated by dividing the total value of the Settlement ($7,900,000) by the total number of Settlement Class Members (88,408).

*Systems East, Inc.*, No. 5:23-cv-01498, ECF Nos. 30, 32 (N.D.N.Y.) (approving data breach settlement with per person value of approximately $4.78).

In sum, "[t]he sizable fund, coupled with the injunctive relief, [should] lead[] the Court to conclude that this factor supports the award of the requested fees." *In re Onix Grp., LLC Data Breach Litig.*, No. CV 23-2288-KSM, 2024 WL 5107594, at *13 (E.D. Pa. Dec. 13, 2024).

**2. The Presence or Absence of Substantial Objections by Class Members.**

The reaction of the Settlement Class so far has been overwhelmingly positive and supports approval of the requested fee. The deadline to submit an opt-out or file an objection is February 12, 2025.[5] To date, there have been zero (0) objections to any aspect of the Settlement, including zero (0) objections to the requested fee. In addition, there have been zero (0) opt-outs submitted to date. The positive reaction from the Settlement Class heavily weighs in favor of the requested fee. *See Curtis v. Scholarship Storage Inc.*, No. 2:14-CV-303-NT, 2016 WL 3072247, at *3 (D. Me. May 31, 2016) (noting that the absence of objections to the settlement "favors approval."); *see also Bacchi v. Massachusetts Mut. Life Ins. Co.*, No. CV 12-11280-DJC, 2017 WL 5177610, at *5 (D. Mass. Nov. 8, 2017) (approving fee request where the number of objections "was a small percentage of the class" and the fee award reflected the risks class counsel undertook, and the favorable settlement recovered for the class).

**3. The Skill and Efficiency of the Attorneys Involved and the Complexity and Duration of the Litigation.**

This Action called for considerable skill and experience, requiring investigation and mastery of complex factual circumstances, the ability to develop creative legal theories, and the skill to respond to a host of legal defenses. (Federman Decl., ¶ 10). Data breach litigation is a cutting-edge area of the law that presents numerous developing issues, evolving precedents, and

[5] https://www.bhidataincidentsettlement.com/.

unpredictable outcomes. *See, e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."); *Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting data breaches are a "risky field of litigation" because they "are uncertain and class certification is rare"); *Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."); *Corra v. ACTS Ret. Servs., Inc.*, No. CV 22-2917, 2024 WL 22075, at *12 (E.D. Pa. Jan. 2, 2024) ("[T[he Court recognizes that data breach cases such as this one are complex and risky, and recovery at trial is decidedly uncertain—$350,000 in cash is significantly better than nothing."); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-1998, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results). Despite these risks, however, Class Counsel undertook this litigation on an entirely contingency fee basis with no promise of any reward. (Federman Decl., ¶ 10).

This case was particularly risky, and Plaintiffs faced substantial hurdles if the litigation were to continue. (*Id.* ¶ 11). Most notably, Plaintiffs faced the risk of surviving dispositive motions for summary judgment and obtaining class certification. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach class action); *Gaston v. FabFitFun, Inc.*, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class

certification."); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying motion for class certification in data breach case); *see also In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 5247287 (D.S.C. Dec. 30, 2024) (denying motion for leave to file a renewed class certification motion). Though Plaintiffs strongly believe in the merits of their claims, Plaintiffs and Class Counsel acknowledge that proving causation and damages in the emerging area of data breach cases can be difficult and is by no means guaranteed. *See, e.g.*, *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 18278431, at *4 (C.D. Cal. Nov. 21, 2022) (explaining that data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury). Continued litigation would have required formal discovery, depositions, expert reports, obtaining and maintaining class certification throughout trial, and summary judgment, as well as possible appeals (interlocutory and/or after the merits), which would require additional rounds of briefing and the possibility of no recovery at all. (Federman Decl., ¶ 11). The Settlement here guarantees relief to the Settlement Class whereas further protracted litigation would not. (*Id.*).

This exceptional Settlement was only obtained through the experience and skill of Class Counsel. Class Counsel are highly experienced in this area of practice and have a well-respected reputation in the data privacy litigation sector. (*Id.* ¶ 16). Class Counsel worked hard and at great risk on behalf of the Settlement Class to obtain information from Defendants regarding the Data Security Incident and utilized their experience and knowledge gained from other data breach class actions to negotiate a favorable Settlement. (*Id.*); *Purinton v. Moody's Co-Worker Owned, Inc.*, No. 2:20-CV-00296-JAW, 2023 WL 167560, at *6 (D. Me. Jan. 12, 2023) (approving attorneys' fees request where "Class Counsel [we]re highly qualified and experienced in complex litigation and [] demonstrated zealous advocacy for their clients in th[e] [action] and other class actions.").

In sum, the Settlement addresses the type of injuries and repercussions sustained by Settlement Class Members in the wake of the Data Incident and offers significant compensation to make each Settlement Class Member "whole." "[T]hrough the Settlement, Plaintiffs and Class Members gain benefits without having to face further risk." *Desue v. 20/20 Eye Care Network, Inc*., No. 21-CIV-61275-RAR, 2023 WL 4420348, at *8 (S.D. Fla. July 8, 2023). Thus, the complexity of the case and the quality of Class Counsel's performance weighs in favor of the fee request.

**4. The Risk of Nonpayment.**

Class Counsel assumed significant risk of nonpayment or underpayment of attorneys' fees by undertaking this case. (Federman Decl., ¶ 23). Class Counsel took this case on a purely contingent basis with the understanding that they would only be compensated if there was a recovery for Plaintiffs, and Court approval of the requested fees. (*Id.* ¶¶ 10–11, 23). This litigation began in 2023 and has required the devotion of substantial time, totaling nearly 600 hours from Class Counsel to date. (*Id.* ¶ 18). A case of this size and complexity required a significant commitment of time and resources from Class Counsel. (*Id.* ¶¶ 15, 18). This time could have been devoted to other fee generating matters of less risk and complexity. (*Id.* ¶ 23). As such, neither compensation for their time nor reimbursement of their costs were guaranteed to Settlement Class Counsel. (*Id.* ¶ 23).

Furthermore, the risk of non-payment is especially prevalent in data breach cases. Many data breach cases are dismissed in their entirety at the motion to dismiss stage, providing no relief for the class and no payment for class counsel. *Scifo v. Alvaria, Inc.*, No. 23-CV-10999-ADB, 2024 WL 4252694 (D. Mass. Sept. 20, 2024) (dismissing data breach case for lack of Article III standing); *Rivera-Marrero v. Banco Popular de Puerto Rico*, No. CV 22-1217 (ADC), 2023 WL 2744683 (D.P.R. Mar. 31, 2023) (similar); *In re MOVEit Customer Data Sec. Breach Litig.*, No.

1:23-MD-03083-ADB-PGL, 2024 WL 5092276, at *13 (D. Mass. Dec. 12, 2024) (dismissing cases due to a lack of traceable injury); *Johnson v. Yuma Reg'l Med. Ctr.*, No. CV-22-01061-PHX-SMB, 2024 WL 4803881 (D. Ariz. Nov. 15, 2024) (dismissing data breach case in its entirety). It is evident from the case law above that by undertaking this case, Class Counsel ran a significant risk of non-payment. Courts "have consistently found that this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award." *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, No. 16-CV-00249-PAB-SKC, 2020 WL 4041456, at *6 (D. Colo. July 17, 2020); *O'Connor v. Dairy*, No. 2:14-00192-NT, 2018 WL 3041388, at *4 (D. Me. June 19, 2018) (awarding attorneys' fees in part because "Plaintiffs' counsel performed this work on a contingent fee basis, assuming the risk that there would be no recovery and therefore no compensation."); *In re Lupron Mktg. & Sales Pracs. Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005) ("Many cases recognize that the risk [of non-payment] assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award."). Therefore, this factor weighs in favor of approval of the requested fee.

**5. The Amount of Time Devoted to the Case by Plaintiffs' Counsel.**

Class Counsel devoted substantial time, labor, and resources to achieve the Settlement. Since inception of the case, Class Counsel (in conjunction with other Plaintiffs' Counsel) have documented 582.30 hours litigating this case to date. (Federman Decl., ¶ 18). This time does not include the time spent preparing the motion for final approval, preparing for the final fairness hearing, supervising the claims administration process, nor responding to Settlement Class Member inquiries about their payments. (*Id.*). All of these activities will require Class Counsel to accrue additional time and fees. (*Id.*). As a result, Class Counsel estimate they will spend in excess of forty (40) additional hours aiding Class Members and completing the Settlement. (*Id.*).

Although Class Counsel have consistently sought to keep costs and fees to a minimum, this case required a significant amount of work and time. (*Id.* ¶ 15). The case was levied against a large company with counsel experienced in data privacy litigation. (*Id.*). Class Counsels' efforts in this matter included:

a. fully investigating the facts and legal claims, including interviewing, and vetting multiple potential plaintiffs;

b. obtaining and reviewing documents from Class Members substantiating their claims;

c. drafting and preparing the complaints, as well as conducting extensive research for those complaints;

d. regularly communicating with the named Plaintiffs to keep them apprised of the progress in the action;

e. reviewing, researching, and considering BHI's motion to dismiss and motion to strike class action allegations;

f. requesting, obtaining, and reviewing documents and information from BHI regarding the Data Incident, BHI's remedial measures after the Data Incident, and BHI's cyber insurance status;

g. preparing a detailed mediation brief outlining the strengths and weaknesses of the case;

h. participating in a mediation with experienced data breach mediation, Bennett G. Picker of Stradley Ronon Stevens & Young, LLP;

i. participating in months of settlement negotiations with BHI to reach and finalize the Settlement Agreement, proposed orders, notice documents, and claim form;

j. developing the notice program and distribution plan for the Settlement;

k. soliciting bids from several settlement administrators to ensure the class was getting

the best notice at a cost-effective price;

l. obtaining preliminary approval of the Settlement;

m. aiding Class members with questions about the Settlement and the claims process; and

n. working with the Settlement Administrator to implement the notice program and oversee the claims process.

(*Id.*). For these reasons, the time and labor required strongly support finding that the requested fee is reasonable. *Purinton*, 2023 WL 167560, at *6 (approving fee request where class counsel "engaged in thorough investigation of the claims, defenses, and damages at issue, and participated in extended settlement efforts with a nationally recognized meditator…").

**6. Awards in Similar Cases.**

Lastly, the attorneys' fees awarded in similar cases support the requested fee here. The total value of the Settlement is $7.9 million when considering the cash portion of the Settlement ($1.5 million) and the value of the injunctive relief ($6.4 million). Class Counsel seek a fee award of $500,000.00, which equates to approximately 33% of the settlement fund. This fee request is directly in line with fee awards in other similar cases. *See, e.g.*, *Kondo*, No. 1:22-cv-10438, ECF No. 39 (awarding 33% of the settlement fund in a data privacy case); *Krant v. UnitedLex Corp.*, No. 23-2443-DDC-TJJ, 2024 WL 5187565, at *7 (D. Kan. Dec. 20, 2024) ("[A] one-third fee also aligns with those awarded by other courts in data breach class action cases."); *In re Novant Health, Inc.*, No. 22-CV-697, 2024 WL 3028443, at *11 (M.D.N.C. June 17, 2024) (collecting cases where 33% was awarded in data privacy class actions and approving the same); *Broeske v. Forward Bank*, No. 2024cv000006, Doc. No. 64 (Wood Cnty. Wis.) (awarding class counsel one-third of the settlement fund in data breach class action); *Turner v. The Johns Hopkins Health Sys. Corp.*, No. 24-c-23-002983 (Cir. Ct. Baltimore Md.) (same).

It is also important to note that Class Counsel do not seek the full amount permitted under

the Settlement Agreement but seek ***$100,000.00 less***. (SA, ¶ 5.2). If Class Counsel had requested the full amount permitted under the Settlement Agreement—$600,000—this would equate to approximately 8% of the total value of the settlement or 40% of the Settlement Fund. Although Class Counsel do not seek the full amount permitted under the Settlement Agreement, a request for that amount—which would take into account the value of the injunctive relief provided, and the monetary relief achieved—is regularly approved by courts across the nation. *See, e.g.*, *In re Solara Medical Supplies Data Breach Litig.*, No. 3:19-cv-02284, ECF No. 150 (S.D. Cal.) (awarding attorneys' fees of $2.35 million, which amounted to 23.5% of the total settlement value of $9,760,000 where common fund amounted to $5.06 million and remedial measures were valued at $4,700,000); *Ebert v. PRGX Global, Inc.*, No. 1:23-cv-04233, ECF Nos. 27, 34 (N.D. Ga.) (awarding attorneys' fees based on the total value of the settlement including both monetary compensation and injunctive relief); *Perez v. Carvin Wilson Software LLC*, No. CV-23-00792, ECF Nos. 48, 53 (D. Ariz.) (awarding attorneys' fees of 23.5% of the total value of the settlement, including non-monetary benefits); *Cox v. Clarus Mktg. Grp., LLC*, 291 F.R.D. 473, 483 (S.D. Cal. 2013) (including injunctive relief when awarding fee request of 24.1% of total settlement value); *In re Wawa, Inc. Data Sec. Litig.*, 2022 WL 1173179, at *9 n.4 (E.D. Pa. Apr. 20, 2022) (finding that the non-monetary benefits should be considered in total value of the settlement). Courts typically allow these requests in the data breach context because after a data breach, class members' data remains in the possession of the defendant, making the implementation of enhanced data security measures to prevent another data breach from occurring in the future particularly meaningful to the class. Here, however, Class Counsel forwent requesting additional attorneys' fees to make additional funds available to the Class, underscoring the reasonableness of their requested fee.

### C. A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee.

Although a lodestar cross-check is not required,[6] a lodestar cross-check confirms the reasonableness of the requested fee. To date, Class Counsel (in conjunction with other Plaintiffs' Counsel) have devoted 582.30 hours to this matter, resulting in a total lodestar of $415,574.30. This results in a modest lodestar multiplier of 1.20.[7] (Federman Decl., ¶ 18). As stated above, this time does not include the time spent preparing the motion for final approval, preparing for the final fairness hearing, supervising the claims administration process, or responding to Settlement Class Member inquiries about their payments, all of which will require Class Counsel to accrue additional time and fees. (*Id.*).

| Firm | Hourly Rate Range | Hours | Lodestar | Expenses |
|---|---|---|---|---|
| Murphy Law Firm | $195.00–$715.00 | 201.60 | $142,324.00 | $9,990.20 |
| Federman & Sherwood | $200.00–$1,150.00 | 186.80 | $156,980.00 | $6,763.02 |
| Laukaitis Law LLC | $325.00–$975.00 | 27.90 | $14,007.50 | $125.00 |
| Milberg Coleman Bryson Phillips Grossman | $208.00–$1,057.00 | 30.20 | $18,860.30 | $270.00 |
| Markovits, Stock, & DeMarco, LLC | $450.00–$850.00 | 25.30 | $16,485.50 | $0.00 |
| Siri & Glimstad LLP | $260.00–$725.00 | 55.20 | $26,547.00 | $695.56 |
| Srounian Law | $350.00–$800.00 | 55.30 | $40,370.00 | $527.00 |
| **TOTAL** | | **582.30** | **$415,574.30** | **$18,370.78** |

Moreover, the hourly rates charged by Class Counsel (and other Plaintiffs' counsel) are the market rates charged for data privacy litigation and have been approved by other courts in similar cases. *See, e.g., Kondo*, No. 1:22-cv-10438, ECF No. 32, 39 (data privacy case in which this Court approved an hourly rate range of $190.00 to $1,050.00); *Barr*, No. 1:20-cv-11492, ECF Nos. 59, 72 (approving hourly rates up to $1,025.00 in data privacy case); *In re Onix Grp., LLC Data*

[6] *See, e.g., In re Relafen Antitrust Litig.*, 231 F.R.D. at 81 ("The First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee."); *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-CV-10219, 2017 WL 5900058, at *1 (D. Mass. Nov. 28, 2017) (similar).

[7] Calculated by dividing the requested fee award ($500,000) by the lodestar ($415,574.30).

*Breach Litig.*, No. CV 23-2288-KSM, 2024 WL 5107594, at *16 (E.D. Pa. Dec. 13, 2024) ("The hourly rates charged by class counsel appear to track the "position, experience, level, and location" of the lawyers and paralegals with the highest rate at $1057 per hour for David Lietz, Esquire and other hourly rates "progressively working downward."); *Perez*, No. CV-23-00792, ECF Nos. 48-1, 53 (approving Federman & Sherwood's hourly rate range of $300.00–$1,150.00); *Hogsed, et al. v. PracticeMax, Inc.*, No. 2:22-cv-01261, ECF Nos. 42-1, 45 (D. Ariz.) (approving hourly rate range from $125.00–$1,450.00); *In re: Orrick, Herrington & Sutcliffe, LLP Data Breach Litig.*, No. 3:23-cv-04089, ECF Nos. 68, 74 (N.D. Cal.) (approving partner hourly rate of $1,150.00, attorney hourly rate of $600.00, and paralegal hourly rate of $300.00).

Furthermore, the requested lodestar multiplier—1.20—is reasonable and is at the lower end of the lodestar multipliers approved by this Court. *See, e.g.*, *In re Relafen*, 231 F.R.D. at 82 (noting that multipliers have ranged from 1.0 to 4.0 and concluding that a multiplier of 2.02 was appropriate); *Roberts v. TJX Companies, Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) (finding lodestar multiplier of 1.96 was reasonable in light of counsel's efforts "consolidating the three class actions, preparing for mediation, engaging in extensive settlement negotiations, undertaking a substantial amount of work in approving the settlement, administering the required notice to class members, and administering the settlement itself—and the significant risk they assumed in taking the case on a wholly contingent basis[.]"); *In re Prograf Antitrust Litig.*, No. 1:11-MD-02242-RWZ, 2015 WL 13908415, at *5 (D. Mass. May 20, 2015) (approving lodestar multiplier of 2.35); *Barr*, No. 1:20-cv-11492-LTS, ECF Nos. 59, 72 (approving multiplier of 1.77 in data privacy case and awarding attorneys' fees of $1,200,000, which amounted to more than 20 percent of the total settlement value, including injunctive relief) (Sorokin, J.). This multiplier will decrease because Class Counsel will spend additional time preparing the Motion for Final Approval of Class Action Settlement, attend the Final Fairness

Hearing, and oversee the claims administration process. Therefore, because the lodestar cross-check confirms the reasonableness of the requested fee, the Court should award Class Counsel attorneys' fees in the amount of $500,000.00.

## IV. CLASS COUNSEL' S LITIGATION COSTS AND EXPENSES SHOULD BE REIMBURSED.

Counsel whose efforts create a common fund to benefit a class are entitled to recover from the fund "expenses reasonable in amount, that were necessary to bring the action to a climax." *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999). To be recoverable, the expenses must be "adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001).

Here, Class Counsel incurred costs and litigation expenses totaling $18,370.78. (Federman Decl., ¶ 19). As explained in Class Counsel's supporting declaration, the reimbursement requested is for unavoidable expenses such as filing fees, copies, mileage and parking, postage, and research fees—all of which inured to the benefit of the Class. (*Id.*). These expenses are typical of litigation, reasonable in amount, and necessary for advancement of the action to the benefit of the Settlement Class. (*Id.*). For these reasons, the above expenses should be approved.

## V. PLAINTIFFS SHOULD BE GRANTED SERVICE AWARDS.

Service awards are commonly awarded in data breach class actions such as this and should also be awarded here. *See, e.g.*, *In re Novant Health, Inc.*, 2024 WL 3028443, at *13 (approving service awards of $2,500.00 in data privacy case where the plaintiffs "reviewed the complaint, stayed in touch with their attorneys, and participated in settlement negotiations, including by reviewing and approving the terms of the proposed settlement."); *Beasley v. TTEC Servs. Corp.*, No. 22-CV-00097-PAB-STV, 2024 WL 710411, at *7 (D. Colo. Feb. 21, 2024) (awarding service awards of $2,500.00 where the plaintiffs were "actively engaged" including, "assisting in the

investigation of the case, producing relevant documents, reviewing and approving pleadings, reviewing the [s]ettlement documents, and answering counsel's many questions.")

Plaintiffs were actively engaged in this litigation and were essential to the success achieved. (Federman Decl., ¶ 24). Among other things, they provided information to Class Counsel, gathered documents, reviewed pleadings, stayed updated about the litigation, and reviewed and approved the Settlement. (*Id.*). The Settlement would not have been possible without the effort and commitment of Plaintiffs, who sacrificed time and put their name on the line for the sake of the Class. (*Id.*). Thus, the requested service awards of $2,500.00 are reasonable and merit approval. *In re Solodyn Antitrust Litig.*, No. CV114MD2503DJC, 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (awarding service award of $90,000.00); *In re Intuniv Antitrust Litig.*, No. 16-CV-12396-ADB, 2022 WL 398744, at *2 (D. Mass. Jan. 26, 2022) (awarding service awards of $5,000.00).

## VI. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court award (i) Class Counsel attorneys' fees in the amount of $500,000.00; (ii) Class Counsel's costs and expenses in the amount of $18,370.78; and (iii) Service Awards of $2,500.00 to each Class Representative.

Dated: January 28, 2025

Respectfully submitted,

*/s/ William B. Federman*
William B. Federman
(admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
E:wbf@federmanlaw.com

A. Brooke Murphy
(admitted *pro hac vice*)
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700

Oklahoma City, OK 73108
Telephone: (405) 389-4989
abm@murphylegalfirm.com

***Settlement Class Counsel***

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *William B. Federman*
William B. Federman